Mr. Breen is when you are ready If it please the court, my name is Alvin Briggs. I would like to discuss the issues on behalf of the appellant. First, I would like to cover initially the order of the trial court granting summary judgment of infringement. Thereafter, I have several issues I would like to discuss depending on how much time is left. Additionally, I would like to invite the court's kind attention to the fact that over the weekend we just found a typo. We had a misquote in one of our briefs. We apologize for that. We filed a corrected brief yesterday on the reply brief. Let me turn my attention to the order granting summary judgment of infringement. That was error. The trial court granted summary judgment it should not have. Mr. Briggs, let's get right to it. The claim describes four sidewalls and a fifth truncated wall. The XP has four sidewalls and instead of a flat or linear truncated wall, it's slightly curved. Why is there a genuine issue of material fact as to whether that curved wall is basically a truncated fifth wall? What you stated is partially accurate but partially inaccurate, Your Honor. The XP container did not have four sidewalls. That is the critical issue. That's the issue with regard to why there was a genuine issue of material fact. On the claim chart, this is the claim chart this was submitted. In opposition to the motion for summary judgment, we submitted an expert report from Dr. Alfred Carvelis, a Ph.D. in engineering. You don't need a Ph.D. in anything to see that that red portion is really two lines, two sidewalls with a curved portion in between. That may be your view, Your Honor, and that might be a reasonable juror's view if they were on the jury and they were given the opportunity to decide it. That was the trial judge's view. That was a factual question. However, we submitted Dr. Carvelis' affidavit and the affidavit is very critical because what he did was, if you look at this XP container from the require that there be four sidewalls extending from the bottom wall. That's the issue. The configuration of this container changes under the handle and what Dr. Carvelis did and he covered in his sworn affidavit report, cuts this in half at the 1200 line and then takes a picture focusing down to identify what comes out of the bottom wall. I'm not following you as responding to Judge Will's question because I'm having the same concerns he is. The district court said there was no dispute as to the structure of the XP. We're all looking at the same thing and all she said was that we don't need an expert for this. We're all looking at the same thing. There's not a factual dispute that arises with respect to this accused product. Why is that wrong? This is the, there is no factual dispute that this is the structure. Correct. The question of whether or not the elements are met was a factual dispute. That is, how many sidewalls emanate from the bottom wall. That was the issue. We submitted Dr. Carvelis' affidavit. What's the level of skill in the art that is required to be an expert in construing what that shape is? I don't suggest anything. I suggest a reasonable juror can do it. I suggest anyone can do it. Oh, that's not the issue. The issue was our expert, whether it's, just because he's an expert doesn't mean you just throw out his opinion. The fact is he observed it. He identifies it. That's what it is. You can look at that and see that that's three walls. You may conclude it's four. If you were on the jury, that would be your option. In opposition to our motion for summary, in opposition, we opposed the motion for summary judgment. They submitted a reply. In the reply, they submitted 244 pages. We identified the issue that there are only three sidewalls. That's what our expert said. In their opposition, docket 503, and this is all in the appendix, they state and they submit that both Thomas Dixon and Richard Galbraith of KTEC unambiguously testified that the XP container has four sidewalls. They submit his testimony. They submit the testimony of Richard Galbraith, who said the it was three sidewalls. This is classic Rule 56, a genuine issue of material fact. Our witness looks at it and says there are three sidewalls emanating from the bottom wall. Their witness looks at it and says there are four. That's a genuine issue of fact. The key word is genuine. Yes, sir. Yes, exactly right. It's a genuine issue of fact. That's what our witness testified to. One can take a look at that photograph, and you may say that's four. You may say that's three. The question is, the Constitution says we have a right to a trial by jury, and both the Supreme Court in the Liberty-Lobby case and this court in the Metro case indicated that on a motion for a summary judgment, the inferences are to be drawn in the non-moving party's favor, and our evidence is to be believed. That's our evidence. It's a genuine issue of material fact. And again, there's the photograph. We have a larger photograph of it. It's in your brief, and the key is the focus on what comes out of the sidewalls, what comes out of the bottom wall. Are there four sidewalls? Here there were not four sidewalls. That was a genuine issue of fact. Now, they say, they argue, KTEC did, and the court agreed, argued, said, well, this is just a question of claim construction. It is not a question of claim construction issue involved. That is, there's four sidewalls extending from the bottom wall. There was no term construed by the court that relates to that. The only term the court construed was a truncated wall. You should probably stay by the microphone. Sorry, Your Honor. Are you picking that up? Very lightly. Okay. In any event, there is no claim construction issue. There is a genuine issue of material fact. The second issue I would like to discuss is the trial court erred in connection with granting summary judgment excluding hobs and grinds as relevant prior art. Now, this is fully briefed, but I would like to invite your attention to the supplemental authority we submitted, and the supplemental authority is the decision of the Board of Patent Appeals of March 26th of 2012, this year, a couple of months ago, and it's the reexamination of the 117 patent. In that opinion, on page 18, the court reviews hobs and grinds and indicated it is analogous prior art. It is erred not to include it. It is in the field of endeavor. It performs this, and hobs and grinds, as you know, the pictures are, they're pictures, such as lemonade or iced tea, but the court, the Board of Patent Appeals indicated the function was something that should have been considered. We're not bound by the board's finding with respect to whether or not that's analogous art. I don't suggest you are. I only submitted a supplemental authority. So why, if cavitation is the central focus and problem and issue in this whole patent, why would Miller and Grinds, which deal with, don't have anything to do with the cavitation thing, they're just pictures, right? Yes, sir. Why would that be analogous art? Because, first, the court and the Board of Patent Appeals identifies it performs the same function and structure, and that is the function is similar because pouring is a part of the blending art. You need the... Yeah, but pouring isn't what they claimed and has nothing to do with this patent. Cavitation question and the problem was what this patent was all about, right? In part, yes. That's clearly... In part? What's the other part? Well, cavitation wasn't any part of the claims. It's not in the claims at all. Is there any dispute that that's the problem that the invention was getting at, that that's the area of interest here? That's certainly an area of interest. Mr. Dixon testified that that was what he intended to seek to address. In addition, one of the issues he was addressing was keeping it to contain in the same box, and so it would be easier for customers to use. So there were at least two issues that he was addressing. But cavitation, no question about it, Your Honor, is the primary issue. He was addressing... And so this allegedly analogous art has nothing to do with that question, right? It's probably true, Your Honor, on the cavitation issue, except it has to do, at least if you look at the Board of Appeals decision, what the Board of Appeals identifies is this art is in the field of endeavor. If it is in the field of endeavor, it is to be considered. You don't get to the particular... If you get to it's not in the field of endeavor, you then do analyze the question of whether this addresses the pertinent problems involved. Well, to me, it's all circular. I mean, whether or not it's the field of endeavor is the same question, right? It's not a two-part test. It's all part of the same test, right? Well, I think the law actually breaks it down as the field of endeavor first, and if the art is considered... If it is not in the field of endeavor, it is only to be considered if it is reasonably pertinent. One of the ways you look as to whether or not it is reasonably pertinent is you look as to whether it is of assistance in solving the problem they are addressing. So I think there are two. The Board of Patent Appeals does hold that it is in the field of endeavor. In addition to those two errors, there were significant trial errors that denied our client a fundamental right to a fair trial. I see I'm in my rebuttal time. We'll take the rest of your time. Thank you, Your Honors. Mr. Foster. May it please the Court, Counsel, it's my pleasure to be here. I'm Brett Foster, representing KTEC, the Appellee in this matter. The invention Mr. Dixon came up with about 11 years ago on Memorial Day weekend while most people were having fun, he was in the shop. He took a generally rectangular jar and he widened it at the bottom and he put this truncated wall that's closer to the central axis than the typical corners formed by the side walls, and that resulted in shifting of the vortex and blending that was unprecedented and revolutionized the industry. Why isn't that a question for the jury? The question of infringement? Infringement. The question of infringement is not for the jury because there were no issues of fact. This was the original MP container, and in the infringement order, the Court noted that they never argued that this MP container didn't infringe, and therefore the structure was found part of the summary judgment order. We're talking about the XP, not the MP. Now we're talking about the MP. The MP is the same. The XP. This is the XP now. Yes. The only difference here, the only difference, you've got still the one, two, three, four side walls, and then you've got the slightly curved fifth truncated wall, and they argued two things to the district court. They said, gee, it's got to be flat. The court construed the claims and said a truncated wall can be curved. They don't appeal that. They also argued you have to have corners between the side wall and the fifth truncated wall or it doesn't infringe. The court rejected that as well. The container is what it is. There's no geometry. The reality of the container is not in dispute. There was nothing to go to a jury. What Mr. Carvelis did was to take the claim construction position of no corners and say, gee, this is a continuously curving wall or a continuous wall. Now one thing the court had, the record shows we presented this jar to the judge, and the you can actually see on this jar the lines where they inserted the mold changed to make it curved versus flat, and you can actually see the witness lines. I'm happy to publish this to the court. The same four walls existed beforehand, and you don't need corners between the flat portions. Was that part of her claim construction about whether or not you needed corners? Correct. It's right in the claim construction order. What he did is repackages it, and he draws nice sharp lines between the blue and the red and the green and the red and the blue and the green, but in fact they also are curved. If you accept their argument, the patented invention, since those are all curved corners, corner areas, you have one wall. Well, that's not what the patent disclosed. Bottom line is there is no issue of fact. It was proper to take this for the judge to decide these issues and leave only true factual issues. This court's precedent is very clear that when the issues are not in dispute, they can properly be decided by a court in managing its docket, and this does not involve any issue of fact, merely a repackaging of claim construction, and the court didn't ignore the expert declaration or affidavit. It directly addressed in the court's order, and the court itself said your argument simply re-argue claim construction points, and that's all it is. Now, as to the next issue, Mr. Briggs argues that we submitted a big reply. Well, that's not really a fair argument to make in respect to the issue we presented, because they had a cross motion for summary judgment and said you've got to have witness testimony talking about the jar. You can't just have the jar and the patent, and we vigorously argued against that. Our reply brief is A9569, and we presented a bunch of testimony of the witnesses where we identified the five walls, so it's really a response to their cross motion where we submitted the declaration and the evidence on the issue. In that same reply, in that same point, we said a visual inspection of the jar together with properly construed claims resolves infringement period, and that's the proper result. It should be affirmed. The decision was very thoughtful, and the court went through the proper legal analysis. Hobbs and Grimes. The issue there is very simple, and the court's questions pinpoint the issue. When you look at the patent, the patent doesn't talk about hand clearance. It doesn't talk about a problem of putting a jar in a quiet box. Those handle problems that were solved long ago and are not present in the art. Quiet box issues and fitting in there. What they did is what this court last week once again reminded us that we shouldn't do, and that is define the problem using the invention, and that's what they've done here. When you look at Mr. Dix's declaration, when you look at the patent, he says each and every time in the interrogatory response that this is the subject of their corrected brief where they tried to cobble the declaration and the interrogatory answer, that every time he says, I want to solve a problem of cavitation and slow blending time, and what this remarkable invention did was take something, a smoothie like a mango agogo that took 42 seconds, and it took it down to 12, and when we had the old jar versus this jar, this jar would do, according to Vitamix's own customers, it would do four smoothies in 15 seconds, theirs could only do two in 30 seconds, which caused them to say all of our customers are going to leave and go somewhere else. That's part of the real world story that's also part of Grimes and Hobbs. Something that's very important. We didn't have a situation where this was an obvious invention. Grimes and Hobbs were never referred to. Mr. Briggs talks about the patent office. Well, the Klein decision just last year talked about reverse the board where it tried to apply a bunch of non-analogous art to fixing the problem that Klein faced, which was a bird feeder with separate compartments to separate the sugar and water at the proper ratios, and issues like boxes that have files and dividers in there, they're not analogous, and the court, once again, reversed that, finding they were not the issue. So you've got many cases talking about defining the problem by the invention. That's wrong. Hindsight. What happened here is nobody went to see Grimes and Hobbs. Nobody looked to Grimes and Hobbs. Miller didn't suggest Grimes and Hobbs in any way, shape, or form. It's talking about blending containers with Miller, with a team, an 80-year-old company that was the Goliath of the blending industry, with a team of engineers, never looked to non-blending technologies, non-blending containers, ever. Never did that. And we've set out in our brief very carefully the response of their people. Wow, this is a breakthrough. How did they do this? What happened? We were surprised. They immediately recognized the solution for their problem would be to copy this device, and that's what they did. And then when the patent was about to issue, they tried 14 different design rounds, and importantly, they didn't get to this, ash is one of their primary references. Part of their design round option was an ash-type design, with an octagon-shaped bottom and a rectangular opening at the top, where they cut off all four corners. And what happened? The testimony at trial was clear, it didn't work. It didn't work at all. So they went to the invisible change, where they didn't want customers to know the difference, they marketed them the same, they kept the photographs and advertisements of the MP to sell the XP, and then later put them both in the same, they had the same product numbers for them, so they were indistinguishable. So in regard to Grimes and Hobbes, that one is dead in the water. If you look at, by the way, the field of invention, that's not even a position Vitamix ever took. They were arguing, yeah, they agreed it wasn't in the field of the invention, which is blending, they tried to rope it in by saying it solved the problem, but again, they've run afoul of that well-settled precedent that you can't define the problem with the invention. Now, a couple of other arguments that I want to touch on, once again, before my time is done. The issues relating to Ash, again, it's going to be in the next appeal, it's in this one. The issue with this invention is mechanically quite simple, and I think the Mint's decision is a great one that was decided last week to help us with technologies like this where we look at that real-world story. At least in our view, the evidence we have, the objective evidence of obviousness is overwhelming and perhaps unprecedented. But what we have with the invention is you've got this generally rectangular jar. Every claim at issue in the lawsuit had the rectangular configuration where you replace one of these typical corners for the jar with a truncated wall, and that brings this wall closer to the central axis than the corners formed by these side walls to make that vortex change. Ash doesn't do that. It's simple. It was very well-known and it's very clear in the prosecution history of the patent and the specification of the patent that when you have equidistant areas that it's not going to infringe. Back to the issue of infringement of Ash designing around. They didn't go with that design, but in that specific design, they actually looked at it, tried it, and it didn't work. The record citation for the PowerPoint, it's in our brief, it's 16674. Does Ash have four side walls? Ash arguably has four side walls. Arguably? It's pretty clear. I think it's got four side walls. Does it have a fifth truncated wall or does it have four truncated walls? It does not have a fifth truncated wall. The patent claims, say, a fifth truncated wall. It doesn't say you can have four symmetrical truncated walls. It does not have a fifth truncated wall because it doesn't truncate, in essence, a typical corner that otherwise would form between the side walls. It doesn't truncate anything typical. In fact, one way to give the telltale sign of what the invention is and what it isn't is to take the invention and say, okay, let's untruncate that corner and extend it hypothetically. What do you get? This jar shows it well because it shows it up here. You get what is just like the others. When you truncate it, one of these is not like the others. Now, look at Ash. Do we have the invention? When you untruncate one of the Ash proposed typical corners, you don't get anything typical. You get an atypical that was identified and admitted to by their own experts. It's not the invention. What I was getting to before your question is in that PowerPoint presentation, when they know the patent is about to issue, they put right in that PowerPoint, corners are all equidistant from the center line of the blade. Here, they're clearly trying to design around. They clearly identify an octagonal structure as not infringing. They choose not to use it. Why? Because it did not perform. It cavitated. That's why they stayed with a copy of the invention when they had more than a dozen other types including that Ash one. That's important because when we're construing the claims, we want to find out what a person's ordinary skill in the art is, what they think the claims are going to cover. We had that. We had Vitamix's engineers look at this and say, this is not going to infringe. Had they gone forward with that four cut-off corner concept, would we be arguing infringement today? Not a chance because of the disclaimer. We got through prosecution. We waited two years and stayed the lawsuit during prosecution of the reexaminations and then redid trial when there was an action closing prosecution. We wouldn't go after it because we overcame Ash. I think a similar disclaimer argument applies to the infringement. How can we construe the claims to cover Ash when they were clearly, we said, no, it isn't Ash, and that simply shows symmetry all around. So when you look at it simplistically, the patent claims all support it. The patent specification supports it. The file history supports it. You can't have equidistant corner areas. And Ash, by the way, those sidewalls, those four sidewalls, never meet to form corners, which is another reason why. The CU corner that they want, it's clear up here away from the blade. It's not where those walls 25A through D would meet. No matter how you slice Ash, it is not going to cut it. The district court, in a series of well-reasoned, thoughtful legal arguments, took care of issues on summary judgment, managed a difficult trial, submitted issues to the jury. The jury found patents were infringed, willfully infringed, not invalid, and assessed damages. It's been a long time coming, but it's time for this case to be over and the judgment to be affirmed. Thank you very much. Thank you, Mr. Foster. Any questions? Thank you, Mr. Foster. Mr. Breed. Thank you, Your Honor. Two points I would like to respond to. First, summary judgment, very, very critical issue here. It is important to remember we submitted an affidavit that said there are three side walls, therefore there is no literal infringement. The only claim of infringement made was literal infringement. Therefore, if one claim is missing, one element is missing, there is no infringement. And this was a motion for summary judgment of infringement, and that's what the court found infringement. Now, in opposition to our affidavit, they submitted their, as I say, 244 pages, and to be sure, some of it was in opposition, undoubtedly, to our motion for summary judgment of non-infringement. But what they designated all in opposition to their further support and their reply in support of their motion for summary judgment. They submit their affidavits and their testimony, and they clearly and explicitly say, both Thomas Dixon and Richard Galbraith of KTEC unambiguously testify the XP container has four side walls. That's in opposition to our affidavits. They further state, indeed, there has been very clear and specific testimony that the XP container has four side walls. That could not put in issue, that could not any better create a genuine factual issue. We say three, they say four. The judge looks at it and decides four. That's for the jury to decide. That's what, again, that's what we were deprived. We were deprived the opportunity for infringement to be decided by the jury as the law has decided. The second issue I'd like to briefly respond to, and that is the suggestion with regard to Hobbs and Grimes, and that is what was the issue that Mr. Dixon was addressing. I invite specifically, this is from his deposition, and this is appendix 10866, that's the page, but he has been questioned, and he at that time testifies with regard to one of the problems he was addressing. The question was, but at that time, then your goal was to sort of tackle one issue at a time and make a blender jar that would fit into the existing quiet box, correct? Answer, it was an added benefit. Question, it was a consideration you had in mind at the time. Yes, it was an issue that was being addressed at the time, and the words the Board of Review used when they were identifying Hobbs and Grimes was just, initially, we do not agree with the patent owner that the pictures of Hobbs and Grimes would not be considered analogous art in formulating blender jars. As pointed out by requester, both pitchers and blenders perform similar functions, such as holding a fluid. Moreover, both pitchers and blenders are used to dispense liquids in similar manners, such as pouring a frozen beverage into a glass. My time is not up. We have the argument, and we will pursue these issues in the next argument. Thank you, Your Honor. Thank you, Mr. Brink. Thank you, Mr. Foster. The case is taken under submission.